Barkley, Appellant, *v.* Adams.

*Partition—Husband and wife—Recognizances—Ejectment.*

Where a husband with the consent of his wife institutes partition proceedings in his own name on behalf of his wife, and a purpart is awarded to him instead of to her, the wife is bound by a sheriff's sale of the purpart under the recognizance entered by the husband for owelty.

Argued Oct. 18, 1893. Appeal, No. 274, Oct. T., 1893, by plaintiff, Josephine Barkley, from judgment of C. P. Washington Co., Nov. T., 1890, No. 139, in favor of defendant, William Adams, on case tried by the court without a jury. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Ejectment. Before McILVAINE, P. J.

The case was tried without a jury, under the act of 1874. The court found the facts as follows :

" *a.* Geo. Bentley died on Oct. 30, 1882, seized of eight tracts or parcels of land situated in Washington county, Pennsylvania. He left no lineal descendants, but a number of collateral heirs, of whom the plaintiff, Josephine Barkley (the wife of W. F. Barkley), was one, and having died intestate she was entitled to the one eleventh of his estate.

" On Feb. 23, 1883, a partition proceeding was instituted in the orphans' court of this county to partition this real estate among these collateral heirs. By this proceeding the land was divided into eight purparts, and on Sept. 11, 1883, the heirs being called, W. F. Barkley elected to take purpart ' A,' containing 155 acres and 34 perches, at its appraised value, to wit, $100 per acre, whereupon the court awarded it to him and directed that he enter into the recognizance required by the act of assembly in such cases ; this he did, and he and his wife entered into possession of the land.

" Josephine Barkley's share of the valuation money of the entire eight purparts, all of which were taken at their appraised values, was $4,856.10, and this sum, by a calculation made and confirmed, as provided by section 1 of the act of April 12, 1855, P. L. 214, was credited on the valuation money of the purpart taken by W. F. Barkley, leaving unpaid and due the other heirs of this valuation money $10,509.94.

" On Oct. 2, 1885, a citation at the instance of one of the heirs was granted by the orphans' court on W. F. Barkley to show cause why an order should not be made for the payment of this balance of the valuation money. W. F. Barkley answered and said that he was advised that the court was without authority to award to him this purpart of the real estate of George Bentley, deceased, and that the decree so made was null and void.

" On Nov. 9, 1886, the orphans' court decreed that W. F. Barkley pay the amount found by the calculation to be due the other heirs [stating the amounts due each heir], with interest from Jan. 1, 1884; a writ of levari facias was directed to issue, by virtue of which the sheriff should sell the land embraced in purpart ' A,' if the money was not paid in forty days. The money was not paid as directed, and the sheriff levied on the real estate and advertised it for sale on Monday, Feb. 14, 1887.

" On that day Josephine Barkley presented her petition to review the partition proceedings, and obtained a stay of the writ of levari facias. An answer was filed to this petition and a hearing was had. On April 16, 1888, a decree of the orphans' court was made denying Josephine Barkley the relief she prayed for, dismissing her petition and lifting the stay of the writ of levari facias. Exceptions were taken to this decree, and on April 30, 1888, Mrs. Barkley took an appeal to the Supreme Court. The decree of the orphans' court was affirmed by the Supreme Court [2 Mona. 274].

" An alias writ of levari facias was issued out of the orphans' court, and in due course of law the land embraced in purpart 'A' was sold on May 31, 1889, the sale was confirmed, and Geo. E. Lockhart, Esq., sheriff of Washington county, acknowledged and delivered his deed to the purchaser, William Adams, one of the defendants in this case, the other defendants being his tenants.

" *b.* [In the proceeding instituted by Josephine Barkley to set aside the decree awarding purpart ' A ' to W. F. Barkley and to prevent the sale of the land to satisfy his recognizance, the orphans' court held that W. F. Barkley, who filed the petition for partition, did not act in his own right or in the right of his wife, but that he acted as the agent of his wife throughout, and that the court in decreeing the land to him decreed it to him as the agent of his wife Josephine Barkley, and that he held the title for her, and that the recognizance was given for her benefit.] [1]

" The Supreme Court, in affirming the decree of the court below, said: ' We have not been persuaded that the court below erred in the disposition of this case. Mrs. Josephine Barkley, through the agency of her husband, was the actor in this partition; and that the purpart was awarded to him instead of to

her, matters little, seeing that her money was used to pay the owelty. She was in equity the owner of the land and could have compelled a conveyance to herself. Under such circumstances she cannot now be allowed to resist the collection of the recognizance.'

"*c.* On the          day of          1890, Josephine Barkley instituted this action of ejectment to recover an undivided one eleventh interest in the tract of land which was awarded to W. F. Barkley in the partition proceeding and which was sold and conveyed to the defendant, William Adams, by the sheriff of Washington county by virtue of the levari facias directed to him by the orphans' court.

" The plaintiff rested her case on the admission that she was an heir of George Bentley, deceased, entitled under the intestate laws of the state to one eleventh of his estate, and that he died intestate, seised of the tract of land described in the writ, and the further admission that the defendants were in possession of this land when suit was brought. The defendants rested their case, (1) on the decree in the partition proceeding awarding this purpart to W. F. Barkley and approving his recognizance for the valuation, less the full amount of Josephine Barkley's share in all the purparts of the real estate of George Bentley, which, by order of the court, was credited as a payment on the valuation money of the purpart awarded to W. F. Barkley ; (2) on the decree of the orphans' court, affirmed by the Supreme Court, refusing to set aside the decree awarding purpart 'A' to W. F. Barkley and to restrain the sale of the land in satisfaction of his recognizance ; and (3) on the sheriff's deed for the whole of the land in dispute.

" CONCLUSIONS OF LAW.

" If W. F. Barkley, in the right of his wife, had taken purpart ' A '—the land in dispute—and had given his recognizance for the full amount of the valuation money, less his wife's share in that purpart, under the authority of Evans v. Ross, 107 Pa. 234, and other cases therein cited, the plaintiff's interest in the land would not have been bound by her husband's recognizance, and the sheriff's vendee would only have taken title to the undivided ten elevenths of the farm sold on the writ issued out of the orphans' court. [But W. F. Barkley was acting for his wife, as her agent, and to him, as such, the land was

awarded. The land pledged for the payment of the recogni-
zance was her land. By the decree of the orphans' court she
had already paid $4,856.10 of the purchase or valuation money.
Her entire interest in the other seven purparts was credited on
the valuation of purpart ' A,' and to that extent the amount of
the recognizance her agent had to give was reduced. Under
these circumstances the case stands just the same as though
the land had been awarded to her by name and she in person
had acknowledged the recognizance. This being the case, her
whole interest in the land was bound by the recognizance ; and
by the judicial sale duly made, to enforce the collection of the
amount to secure which the recognizance was given, all the
title she had in the land passed to the sheriff's vendee.] [2]
Snively's Estate, 129 Pa. 262, and cases there cited.

" [We, therefore, find in favor of the defendants for the land
in dispute, and, if no exceptions are filed to this decision, as
provided by the act of assembly, judgment will be entered
against the plaintiff, and in their favor, for the land described
in the præcipe and writ, and for costs.] " [6]

Exceptions by plaintiff were overruled ; judgment for de-
fendant. Plaintiff appealed.

*Errors assigned* were, (1, 2, 6) findings as in brackets ;
(3–5) admitting in evidence record of partition, and of sheriff's
sale and sheriff's deed ; (7) decree dismissing exceptions and
entering judgment ; quoting findings, bills of exceptions and
evidence, and decree.

*J. M. Braden, Thomas M. Marshall* with him, for appellant,
cited : Evans v. Ross, 107 Pa. 134 ; Fogelsonger v. Somer-
ville, 6 S. & R. 267.

*John Aiken, J. W. & A. Donnan* with him, for appellee,
cited : Herr v. Herr, 5 Pa. 428 ; Merklein v. Trapnell, 34 Pa.
42 ; Painter v. Henderson, 7 Pa. 48 ; Snyder v. Snyder, 6 Bin.
497 ; Bigelow on Estoppel, 67 ; Snively's Est., 129 Pa. 250 ;
Cubbage v. Nesmith, 3 Watts. 314 ; McCandless' Ap., 98 Pa.
494.

PER CURIAM, November 13, 1893 :
When Mrs. Barkley appealed to this Court before, from the

decree of the orphans' court refusing to review the partition proceedings, and to set aside the decree awarding the purpart to her husband, we said : " We have not been persuaded that the court below erred in the disposition of this case. Mrs. Josephine Barkley, through the agency of her husband, was the actor in this partition ; and that the purpart was awarded to him instead of to her matters little, seeing that her money was used to pay the owelty. She was in equity the owner of the land and could have compelled a conveyance to herself. Under such circumstances she cannot now be allowed to resist the collection of the recognizance" [2 Mona. 274].

We treated her as the owner of the land, although the acceptance was in the name of her husband, and held that she was bound by the recognizance given to secure the owelty. This was an adjudication that the land was hers with the same effect as if she had accepted the purpart herself, and executed the recognizance in her own name. That being so her entire interest in the land of the intestate passed by the sheriff's sale under the recognizance, as we decided in Snively's Estate, 129 Pa. 250. By consequence she has no interest to support her claim of title in the present action of ejectment. The case was rightly decided by the learned court below.

Judgment affirmed.